**VOGIAS, Appellant,**

v.

**OHIO FARMERS INSURANCE COMPANY, Appellee.**

[Cite as *Vogias v. Ohio Farmers Ins. Co.*, 177 Ohio App.3d 391, 2008-Ohio-3605.]

Court of Appeals of Ohio,
Eleventh District, Portage County.

·No. 2007–P–0099.

Decided July 18, 2008.

Sandvoss & Lentz, and Norman V. Sandvoss, for appellant.

Ulmer & Berne, L.L.P., and Robert E. Chudakoff, for appellee.

MARY JANE TRAPP, Judge.

{¶ 1} Tari S. Vogias appeals from a judgment of the Portage County Court of Common Pleas granting summary judgment in favor of Ohio Farmers Insurance Company on her breach-of-contract and bad-faith claims, which arose from an insurance claim she had filed to recover a loss of certain personal property. For the following reasons, we affirm.

Substantive Facts and Procedural History

{¶ 2} Vogias and her then husband, David A. Vogias, were insured under a homeowners' policy issued by Ohio Farmers, effective from October 3, 2002, to October 3, 2003. Section 1, paragraph 8 of the policy states: "Suit against us. No Action can be brought unless the policy provisions have been complied with and the action is started within one year after the date of loss."

{¶ 3} The instant lawsuit stemmed from a claim Vogias filed with Ohio Farmers on May 20, 2005, which reported a theft of 25 pieces of jewelry worth $47,816 in July 2003, in a home she owned in Fort Myers, Florida.

{¶ 4} Vogias discovered the jewelry to be missing when she returned to her Florida home in November 2003. However, she did not file a claim with Ohio Farmers until May 2005, almost 18 months later, when a friend advised her that the loss occurring in her Florida home could be covered under her homeowners' policy. In her claim she reported the actual date of loss as July 16, 2003. She based that date on a pawn slip dated July 16, 2003, which she discovered in November 2003 and believed to be related to her missing jewelry. As of November 2003, because of her divorce, Vogias was no longer a named insured on the policy. She had been removed on August 13, 2003.

{¶ 5} Before Ohio Farmers started an investigation of Vogias's claim, she signed a nonwaiver agreement on May 25, 2005. The document stated the following:

{¶ 6} "Any action taken by any member company and/or circumstances surrounding the loss, or investigating the cause of and/or circumstances surrounding

the loss, or investigating and ascertaining the amount of loss and damage which occurred on July 16, 2003, shall not waive or invalidate any of the terms or conditions of any policy or policies of insurance, or any defense thereunder, and shall not waive or invalidate any rights whatsoever of any of the parties to this agreement.

{¶ 7} " * * * [N]either the examination of the insured * * * nor the incurring of any trouble or expense by the insured shall waive or invalidate any of the terms and conditions of the policy or policies of insurance, nor any defense thereunder."

{¶ 8} On August 23, 2005, Ohio Farmers issued several checks to Vogias based on the information she had provided regarding the theft of her jewelry, including her representation that she had filed a police report in Florida regarding the jewelry theft.

{¶ 9} However, a few days after these checks were issued, Ohio Farmers received a copy of the police report she had filed, which showed the report to have been filed on November 12, 2003, not in July of 2003, the time of loss initially reported by Vogias. Further, Ohio Farmers discovered that the report related only to the theft of her washer and dryer, a hammock, chairs, and a television. No jewelry was listed on the report. Ohio Farmers later confirmed that Vogias orally notified the Florida detective investigating her theft case that some jewelry was also missing, but the detective had no recollection of Vogias telling him that a substantial amount of jewelry was missing. Because the date of the police report was outside the period Vogias was a named insured on the policy, Ohio Farmers immediately stopped payment on those checks. It, however, continued to investigate her claim.

{¶ 10} During its investigation, Ohio Farmers apparently never advised Vogias that her claim was beyond the contractual time period for a lawsuit. Because of a divorce from her husband, Vogias did not possess a copy of her homeowners' policy and was unaware of that contractual provision, and, although she requested a copy from Ohio Farmers in October 2005, she did not receive it until a year later.

{¶ 11} On June 1, 2006, while Ohio Farmers was still investigating her claim, Vogias filed a complaint in the trial court alleging a breach of contract against Ohio Farmers.

{¶ 12} On June 13, 2006, an "examination under oath" ("EUO") of Vogias took place at Ohio Farmers' request pursuant to the requirement of her policy. Her statements at the EUO revealed that a friend of hers stayed at her Florida home around the time the theft of her jewelry allegedly occurred. However, before Ohio Farmers could further question the circumstances surrounding the occur-

rence and discovery of the theft, Vogias became upset and terminated the proceeding. The transcript of that proceeding reflects the following statement by Ohio Farmers' counsel: "[Vogias' counsel] has informed me that his client is upset and he does not want her—or she does not want to proceed in her current condition. And so we are going to adjourn for now, obviously reserving our right to complete the examination under oath which the insurance company is entitled to under the terms and conditions of the insurance policy." The following day Ohio Farmers' counsel sent Vogias's counsel a correspondence that stated: "Ohio Farmers has requested and shall continue to require strict adherence to all of the policy of insurance terms, conditions, and requirements, including without limitation the policy conditions requiring that she submit to an Examination Under Oath."

{¶ 13} On November 8, 2006, Ohio Farmers moved for summary judgment asserting that Vogias's court action was time-barred. On December 4, 2006, Vogias filed a brief opposing Ohio Farmers' motion for summary judgment. On the same day, Vogias also filed an amended complaint, alleging that Ohio Farmers, in conducting an investigation of her claim, had led her to believe it would settle or pay the value of her claim, and that it acted in bad faith in failing to inform her that her claim was beyond the one-year suit period.

{¶ 14} On January 12, 2007, the trial court granted summary judgment in favor of Ohio Farmers on Vogias's breach-of-contract claim, based on the expiration of the one-year period of limitations for filing a lawsuit as stated in her homeowners' policy. The trial court also rejected her claim that she was prejudiced by Ohio Farmers' failure to notify her as to the expiration of the one-year period. The court reasoned that the insurance company "has no duty to perform a vain act," as it was not even aware of her claim of loss until after the contractual one-year period had already expired.

{¶ 15} Vogias filed an appeal from that judgment and this court remanded the case to the trial court for it to adjudicate the claim of bad faith Vogias had presented in her amended complaint.

{¶ 16} Subsequently, on May 1, 2007, Ohio Farmers filed its second motion for summary judgment on the bad-faith claim. In support of its motion for summary judgment, Ohio Farmers attached an affidavit dated April 30, 2007, by Thomas S. Seymour, an investigator for Ohio Farmers involved in Vogias's claim. The affidavit stated: "If Tari Vogias had complied with the policy conditions and had allowed Ohio Farmers to complete its investigation, and if the investigation had revealed that the insurance claim was valid and covered under the terms and conditions of the policy, then Ohio Farmers would have paid the insurance claim in accordance with the terms of the policy, even though the suit limitations period in the policy had already expired."

{¶ 17} Thereafter, on June 7, 2007, Vogias filed a motion to revise the order of January 12, 2007, claiming that the statement by Seymour constituted "an admission that the defendant was waiving the one year provision to file suit." She asked the trial court to revise its judgment on her breach-of-contract claim based on the "admission."

{¶ 18} On October 25, 2007, the trial court granted summary judgment in favor of Ohio Farmers on the bad-faith claim. It did not rule on Vogias's motion to revise the order.

{¶ 19} Vogias now appeals from the trial court's grant of summary judgment in favor of Ohio Farmers on her breach-of-contract and bad-faith claim, assigning the following errors for our review.

{¶ 20} "[1] The trial court committed prejudicial error in granting appellee's motion for summary judgment on the claim of breach of contract.

{¶ 21} "[2] The trial court committed prejudicial error in granting appellee's motion for summary judgment on the claim of bad faith.

{¶ 22} "[3] The trial court committed prejudicial error by not revising its order granting summary judgment on appellant's breach of contract claim based on newly discovered evidence."

Standard of Review

{¶ 23} Summary judgment is appropriate under Civ.R. 56(C) when (1) there is no genuine issue of material fact remaining to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing the evidence in favor of the nonmoving party, that conclusion favors the moving party. *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 364 N.E.2d 267.

{¶ 24} "Since summary judgment denies the party his or her 'day in court' it is not to be viewed lightly as docket control or as a 'little trial.' The jurisprudence of summary judgment standards has placed burdens on both the moving and the nonmoving party. In *Dresher v. Burt* [ (1996), 75 Ohio St.3d 280, 662 N.E.2d 264], the Supreme Court of Ohio held that the moving party seeking summary judgment bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record before the trial court that demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim. The evidence must be in the record or the motion cannot succeed. The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case but must be able to specifically point to some evidence of the type listed in Civ.R. 56(C) that affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims.

If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. If the moving party has satisfied its initial burden, the nonmoving party has a reciprocal burden outlined in the last sentence of Civ.R. 56(E) to set forth specific facts showing there is a genuine issue for trial. If the nonmoving party fails to do so, summary judgment, if appropriate shall be entered against the nonmoving party based on the principles that have been firmly established in Ohio for quite some time in *Misteff [Mitseff] v. Wheeler* (1988), 38 Ohio St.3d 112, 526 N.E.2d 798." *Welch v. Ziccarelli,* 11th Dist. No. 2006–L–229, 2007-Ohio-4374, 2007 WL 2410102, ¶ 40.

{¶ 25} "When reviewing a summary judgment case, appellate courts apply a de novo standard of review. * * *A reviewing court will apply the same standard a trial court is required to apply, which is to determine whether any genuine issues of material fact exist and whether the moving party is entitled to judgment as a matter of law." *Hapgood v. Conrad,* 11th Dist. No. 2000–T–0058, 2002-Ohio-3363, 2002 WL 1400583, ¶ 13.

Breach–of–Contract Claim

■ {¶ 26} The trial court granted summary judgment to Ohio Farmers on Vogias's breach-of-contract claim based on the expiration of the contractual one-year period for suit specified in Section 1, paragraph 8 of her homeowners' policy. Vogias concedes on appeal that her lawsuit was filed beyond the contractual period of limitations but asserts that Ohio Farmers should be estopped from asserting that defense, citing the syllabus of *Hounshell v. Am. States Ins. Co.* (1981), 67 Ohio St.2d 427, 21 O.O.3d 267, 424 N.E.2d 311, which states:

{¶ 27} "An insurance company may be held to have waived a limitation of action clause in a fire insurance policy by acts or declarations which evidence a recognition of liability, or acts or declarations which hold out a reasonable hope of adjustment and which acts or declarations occasion the delay by the insured in filing an action on the insurance contract until after the period of limitation has expired."

{¶ 28} In that case, the insurer made an offer to settle an insured's claim. The insured rejected the offer and instead commenced an action in the court. The insurer sought summary judgment on the ground that the action was barred by a contractual provision limiting the time within which a suit may be brought. The court concluded that the insurer's right to assert a time limitation in the contract could be lost by estoppel or waiver. It reasoned that the insurer's relinquishment of the right of limitation by its settlement offer was a waiver and that the waiver occurred because the insurer recognized liability under its policy and its offer of settlement led the insureds to delay in bringing an action on the insurance contract. The court, however, cautioned that not all offers of settlement by insurance companies were to be construed as waivers of the time

limitation; however, an offer that was an express or implied admission of liability constituted a waiver.

{¶ 29} Relying on Hounshell, Vogias argues that Ohio Farmers either waived the defense of the one-year suit period, or should be estopped from asserting that defense, because it investigated her claim and issued several checks to pay her claim with the knowledge that the contractual period for a suit had expired.

{¶ 30} Vogias's reliance on Hounshell is misplaced. There, the insurer recognized its liability and made an offer to settle the insured's claim, causing the delay by the insured in filing a claim in the court. In the instant case, by the time Vogias notified Ohio Farmers of the loss of her jewelry, 18 months after her discovery of the loss, the one-year contractual period of limitations had already expired. The delay in making her claim and filing her suit, unlike in Hounshell, is due to her own inaction even though her jewelry was specifically itemized in a schedule attached to her policy.

{¶ 31} Furthermore, under a belief that the contractual time limitation applies to both a court action and her ability to have her claim investigated and paid by Ohio Farmers, she argues that by investigating her claim, Ohio Farmers waived the time limitation for a court action. She is mistaken, as these are two separate matters. There is no time limitation in her homeowners' policy for an investigation and payment of a claim, but there is an express clause limiting a time within which suit can be brought. By investigating her claim, Ohio Farmers' action can in no way be construed as waiving the time limitation for a legal action.

{¶ 32} As to her argument that Ohio Farmers recognized its liability in issuing several checks to pay her claim, it is undisputed that Ohio Farmers issued the checks based on her representation that the theft of her jewelry occurred in July 2005. Ohio Farmers stopped payment immediately when it received a copy of the Florida police report indicating the report was filed in November 2003, outside of the period she was a named insured on the policy. The "acts or declarations which evidence a recognition of liability" required by Hounshell for a waiver of a limitation of action are simply not present in this case.

{¶ 33} Finally, the record in this case contains a nonwaiver agreement signed by Vogias, through which Ohio Farmers affirmatively expressed that in investigating her claim it did not waive any terms and conditions of the insurance contract, thus precluding Vogias's waiver or estoppel claim.

{¶ 34} Under this assignment of error, Vogias also argues that there remains a factual issue of whether she had complied with the contractual requirement regarding the EUO. She argues that she did submit to an EUO on June 13, 2006, which lasted an hour and half before it was adjourned, and

therefore the question of whether she complied with the EUO requirement is a factual issue that should be decided by the jury.

■ {¶ 35} It is well established that the failure of an insured to submit to an EUO in violation of an insurance policy condition requires a dismissal of a lawsuit. For example, in *Jarrett v. Progressive Preferred Ins. Co.,* 11th Dist. No. 2003–P–0045, 2004-Ohio-5323, 2004 WL 2803288, ¶ 26, this court upheld summary judgment granted by the trial court in favor of the insurer based on the insured's lack of cooperation regarding an EUO required by the policy. In *Johnson v. Allstate Ins. Co.,* 11th Dist. No. 2001–T–0127, 2002-Ohio-7165, 2002 WL 31862234, ¶ 43, this court likewise affirmed summary judgment in favor of an insurer because of the insured's lack of cooperation with the investigation by, among others, failing to produce her son for a timely EUO, thus materially and substantially prejudicing the insurer's ability to properly evaluate her claim of loss. Thus, in order to defeat Ohio Farmer's motion for summary judgment, it is crucial that Vogias completed the EUO as required by her policy.

{¶ 36} The record reflects that at the EUO, Vogias supplied background information regarding her claim; however, she terminated the EUO unilaterally before Ohio Farmers could obtain any substantive information crucial to her recovery, including whether she orally reported a theft occurring in July 2003 of her jewelry to a detective when she filed a police report in November 2003. Given this record, we cannot but conclude that there exists no genuine issue of material fact as to her failure to comply with the EUO requirement, thus warranting summary judgment in favor of Ohio Farmers.

{¶ 37} Accordingly, construing the evidence most strongly in favor of Vogias, the trial court properly determined that there existed no genuine issue of material fact on her breach-of-contract claim and Ohio Farmers was entitled to judgment as a matter of law. Vogias's first assignment of error is overruled.

Bad–Faith Claim

■ {¶ 38} Under the second assignment of error, Vogias asserts that Ohio Farmers' handling of her claim gives rise to a cause of action for bad faith. We will now determine whether there is a genuine issue of material fact regarding whether Ohio Farmers acted in bad faith in the course of investigating and handling her claim.

■■ {¶ 39} We recognize that an insurer has a duty to act in good faith towards its insured in carrying out its responsibilities under the insurance policy. *Hoskins v. Aetna Life Ins. Co.* (1983), 6 Ohio St.3d 272, 6 OBR 337, 452 N.E.2d 1315, paragraph one of the syllabus. Furthermore, "[a]n insurer fails to exercise good faith in the processing of a claim of its insured where its refusal to pay the claim is not predicated upon circumstances that furnish reasonable justification

therefor." *Zoppo v. Homestead Ins. Co.* (1994), 71 Ohio St.3d 552, 644 N.E.2d 397, paragraph one of the syllabus. Accord *Wagner v. Midwestern Indemn. Co.* (1998), 83 Ohio St.3d 287, 289, 699 N.E.2d 507.

{¶ 40} In *Tokles & Son, Inc. v. Midwestern Indemn. Co.* (1992), 65 Ohio St.3d 621, 605 N.E.2d 936, the court set forth the proper summary-judgment analysis in a bad-faith claim:

{¶ 41} "[T]o grant a motion for summary judgment brought by an insurer on the issue of whether it lacked good faith in the satisfaction of an insured's claim, a court must find after viewing the evidence in a light most favorable to the insured, that the claim was fairly debatable and the refusal was premised on either the status of the law at the time of the denial or the facts that gave rise to the claim. Such a standard is not contradictory to Civ.R. 56. Civ.R. 56(C) states that summary judgment is appropriate only where there is no genuine issue of material fact. To withstand a motion for summary judgment in a bad faith claim, an insured must oppose such a motion with evidence which tends to show that the insurer had no reasonable justification for refusing the claim, and the insurer either had actual knowledge of that fact or intentionally failed to determine whether there was any reasonable justification for refusing the claim." Id. at 630, 605 N.E.2d 936.

{¶ 42} Here, the evidence before the trial court in ruling upon Ohio Farmers' motion for summary judgment establishes that Vogias filed a claim for the loss of her jewelry with Ohio Farmers 18 months after she discovered the loss. Although the contractual one-year period of limitations for filing a court action had expired at the time Vogias filed her claim, Ohio Farmers nonetheless started an investigation under a reservation of rights expressed in a nonwaiver agreement with Vogias. Based on her representation that a theft of her jewelry occurred on July 16, 2003, and that a police report had been filed, Ohio Farmers issued several checks. However, it immediately stopped payment on these checks upon its discovery that the police report had been filed in November 2003—instead of July 2003—outside of the period she was a named insured on the homeowners' policy. Ohio Farmers, however, continued to investigate her claim, even after Vogias filed the instant court action. It conducted an EUO as may be required for recovery pursuant to the terms of the insurance contract. However, when being questioned about her knowledge of the circumstances of the theft of her jewelry, she became upset and terminated the EUO.

{¶ 43} Given these undisputed facts, we have determined that reasonable minds can come to but one conclusion, that Ohio Farmers' denial of Vogias's claim was reasonably justified. Because Ohio Farmers' conduct was "predicated upon circumstances that furnish reasonable justification," the trial court properly

granted summary judgment in favor of Ohio Farmers. The second assignment of error is without merit.

Motion to Revise Order

{¶ 44} Vogias's third assignment of error relates to her motion to revise the order of January 12, 2007, in which she asked the trial court to revise its order granting summary judgment in Ohio Farmers' favor on her breach of contract claim. She asserted that Seymour's April 30, 2007 affidavit constituted new evidence warranting a revision of the trial court's order. The trial court never ruled on this motion, and Vogias contends on appeal that the trial court committed prejudicial error by not revising that order.

{¶ 45} It is well settled that when a motion is not ruled on by a trial court, it is deemed to be denied. *Newman v. Al Castrucci Ford Sales, Inc.* (1988), 54 Ohio App.3d 166, 169, 561 N.E.2d 1001. Therefore, by not ruling on Vogias's motion to revise, the trial court effectively denied the motion.

{¶ 46} Seymour's affidavit stated that Ohio Farmers would have paid Vogias's claim if she had complied with the terms and conditions of her policy despite the one-year period of limitations to file a court action. We fail to see how Ohio Farmers' willingness to investigate and pay her claim upon her compliance with the terms and conditions of the policy can be construed as a waiver of the one-year limitation for filing a court action, especially when Ohio Farmers carried out the investigation under a nonwaiver agreement with Vogias. Therefore, Seymour's affidavit does not warrant a revision of the trial court's order granting Ohio Farmers summary judgment on the ground that her action was time-barred. Vogias's third assignment of error is overruled.

{¶ 47} In summary, the trial court properly granted summary judgment on Vogias's breach-of-contract claim in favor of Ohio Farmers because her court action was filed beyond the contractual one-year period of limitations. The court also properly granted summary judgment on her bad-faith claim because Ohio Farmers could not have acted in bad faith in willingly investigating her claim despite the fact that the contractual period for a legal action had expired.

{¶ 48} For the foregoing reasons, we affirm the judgment of the Portage County Common Pleas Court.

Judgment affirmed.

RICE and CANNON, JJ., concur.